**IT IS ORDERED as set forth below:**



**Date: September 16, 2020**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

## ~~UNITED STATES BANKRUPTCY COURT~~
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NUMBER |
| | * | |
| FRED MILANI, | * | 15-54748-LRC |
| | * | |
| | * | PROCEEDINGS UNDER |
| | * | CHAPTER 7 OF THE |
| Debtor | * | BANKRUPTCY CODE |

## ORDER

Before the Court is the _Motion to Defer or Deny Debtor's Motion for Summary Judgment or To Condition Consideration Upon Completion of Discovery_ (Doc. 94, as amended by Doc. 106) (the "Motion"), filed by Francis X. Moore and FXM, P.C. (collectively, "Moore"). The Motion arises out of the Motion for Entry of an Order Compelling Frank X. Moore to Appear and Show Cause as to Why He Should Not be Held in Contempt for Violation of the Discharge Injunction (the

"Contempt Motion"), filed by Fred Milani ("Debtor").  Debtor opposes the Motion (the "Opposition") (Doc. 108).

## I. <u>BACKGROUND</u>

In the Contempt Motion, Debtor asserted that Moore violated the discharge injunction of 11 U.S.C. § 524 when he filed a complaint (the "Complaint") (Doc. 79-3, Exh. A) against Debtor in the Superior Court of Dekalb County, Georgia (the "State Court Action").  Doc. 46.  In the State Court Action, Moore accused Debtor of engaging in a conspiracy that began prepetition and continued post-petition and sought enforcement of his lien against property that he believes Debtor has acquired an interest in post-petition.  Moore asserts that the Complaint seeks damages arising only from Debtor's post-petition participation in the conspiracy or for enforcement of his lien rights and, therefore, does not violate the discharge injunction.

This dispute stems from Moore's legal representation of Debtor.  According to the Complaint, in 2010, Debtor hired Moore to defend against collection of loans made to Debtor's companies, Portofino at Lake Lanier, LLC ("Portofino") and MHB Homes, LLC ("MHB Homes"), and guaranteed by Debtor, which were used to purchase land for a real estate development at Lake Lanier (the "Land").  Complaint, ¶¶ 1, 63-65.  Debtor and Moore agreed to a contingency fee arrangement, whereby Moore would receive 35% of any reduction in Debtor's total liability (the "Fee Agreement").  *Id.* ¶¶ 150-51.  The lender claimed it was owed $14,888,267.03.  *Id.*

2

¶ 160.  Pursuant to a settlement agreement with Debtor, however, the lender agreed to accept $1,200,000 as payment in full (the "Settlement").  *Id*. ¶ 161.  Accordingly, Moore claimed that he had reduced Debtor's debt by $13,688,267 and was, therefore, entitled to receive $4,790,893.46 under the Fee Agreement.  *Id*. ¶ 163.

Debtor later offered to pay Moore only $250,000 for his attorney's fee.  *Id*. ¶ 165.  Moore rejected the offer and, on October 10, 2013, filed an attorney's lien against the Land and certain dock permits (the "Attorney's Lien").  *Id.*, ¶¶ 5, 167. After Moore filed the Attorney's Lien, in and around December 2013 and January 2014, Debtor conspired with the lender to foreclose on the Land and offered to pay the lender an extra $100,000 to conduct a "friendly foreclosure," through which Debtor would hire a third party to purchase the land at the foreclosure sale.  *Id*. at ¶¶ 180-88.  On February 2, 2014, the Land was sold for a total of $1,199,370, which Moore claims was only a fraction of the Land's actual value.  *Id*. at ¶¶ 184-87.  This foreclosure effectively wiped out the Attorney's Lien.[1]

Thereafter, the parties to this conspiracy carried out their prearranged plan. *Id*. ¶¶ 190-93.  As of July 31, 2014, Debtor and his co-conspirator, Xiangtong Lu,

---

[1]  The Complaint contained several allegations of what Moore describes as a similar conspiracy engaged in by Debtor, using funds provided by Mr. Lu, to protect his personal residence from loss by foreclosure and to defraud junior lien holders on his home.  The purpose of these allegations appears to be to establish a pattern of past conduct that would prove that Debtor engaged in a conspiracy to defraud Moore with regard to his Attorney's Lien and the Land. Complaint, ¶¶ 113-19.

3

through an entity known as Diamond Island, LLC, had acquired ownership of the Land. *Id*. ¶ 193.

On December 16, 2014, Moore filed suit against Debtor for breach of contract. *Id*. ¶ 196. That case was later stayed, however, when Debtor filed the instant Chapter 7 bankruptcy petition on March 12, 2015 (the "Petition Date"). Doc. 1. Moore did not seek a determination of the dischargeability of any debt owed by Debtor and, on July 8, 2015, the Court granted Debtor's discharge. Doc. 33.

On September 28, 2017, Moore filed the Complaint. The Complaint asserted that, after the filing of the bankruptcy petition, Debtor, in further conspiracy with Mr. Lu, caused Portofino and MLB to transfer fraudulently to Debtor personal property that had value to creditors of Portofino and MLB, including Moore. Complaint, ¶¶ 205, 208. The Complaint specifically stated that Moore had "named [Debtor] as a defendant solely for the purpose of recovering damages and obtaining relief for Milani's conduct, transactions or occurrences after March 12, 2015[,] or for any conspiracy that he joined in, continued, or ratified on and after March 12, 2015[,] to the fullest extent permitted under applicable bankruptcy law." Complaint, ¶ 200. In Count 2 of the Complaint, Moore further stated that, "[b]ecause [Debtor] took actions after March 12, 2015[,] to participate, ratify, and gain the benefit of the conspiracy that resulted in the wrongful and fraudulent foreclosures [Moore] seeks a judgment against him personally to the fullest extent permitted under applicable

4

bankruptcy law." *Id*. ¶ 222.  Similar caveats were included in Counts 3-5.  *Id*. ¶¶ 233, 247, 255.  Counts 6 and 7 seek establishment or recognition of and enforcement of liens or a constructive trust against the Land, rather than damages against any individual, but implicate Debtor's ownership of property through his alleged alter egos.  *Id*. ¶¶ 266-77.  Count 8 seeks prospective relief against all defendants, including Debtor, in the form of a protective order preventing harassment or other injury to Debtor and his family members.  *Id*. ¶¶ 278-82.  In the prayer for relief, Moore sought a "judgment and decree granting and awarding all equitable and lawful relief, compensatory damages, punitive or exemplary damages, pre-judgment interest, attorney's fees and costs to which [Moore] is entitled and has requested herein."

Instead of answering the Complaint, Debtor moved to reopen this bankruptcy case, alleging that the filing of the State Court Action violated the discharge injunction imposed by § 524.  On December 12, 2017, the Court granted Debtor's motion (Doc. 43), and Debtor filed the Contempt Motion.  Despite Debtor's filings in this case, Moore moved for entry of default judgment in the State Court Action on December 11, 2017.  Doc. 79-3, Exh. C.  To that motion, Moore attached a proposed order that included a statement that:  "The judgment against [Debtor] shall not be for the purpose of collecting any debt owing by [Debtor] to [Moore] which was discharged in [Moore's] third personal Chapter 7 (liquidation) bankruptcy case

filed on March 12, 2015[,] . . . , but is for any and all liability for which [Debtor] is liable based on his actions following March 12, 2015[,] to the fullest extent permitted under applicable bankruptcy law without violating [Debtor's] discharge in said bankruptcy case."

On December 18, 2017, Debtor raised the discharge injunction as a defense in the State Court Action by filing a motion to open the default.  Doc. 79-3, Exh. E. Thereafter, Defendant twice amended the Complaint to include a further caveat, explaining that he only sought whatever relief he was entitled to under the Attorney's Lien and did not intend to violate § 524 (the "First Amended Complaint" and the "Second Amended Complaint").  Doc. 79-3, Exh. F (filed February 4, 2018); Exh. G (filed March 8, 2018).

On August 13, 2018, Debtor moved for summary judgment on the Contempt Motion (Doc. 79) (the "SJ Motion").  Moore failed to respond to Debtor's motion. When Defendant failed to respond to the SJ Motion within twenty-one days, Debtor filed the affidavit of his attorney, Benjamin S. Klehr (the "Affidavit"), who testified that, *inter alia*, (1) Moore's deadline for responding to the SJ Motion expired no later than September 7, 2018; (2) Moore had not responded to the SJ Motion; (3) under the Court's local rules "failure to file a response shall indicate no opposition to the motion," BLR 7007-1(c); and (4) by failing to file a response to the SJ Motion, Moore has indicated he has no opposition to the SJ Motion, the Court should grant

the SJ Motion.  Klehr Aff., Doc. 80, ¶¶ 12-15.  Instead of responding to the SJ Motion, Defendant filed a Motion to Strike the statements identified above (Doc. 81).

The Court granted Moore's Motion to Strike on December 20, 2018.  (Doc. 90).  In doing so, the Court agreed with Moore that BLR 7007-1(c) does not apply to contested matters unless otherwise ordered by the Court and held that Moore had been under no obligation to respond to the SJ Motion within twenty-one days.  The Court did, however, order that the provisions of BLR 7007-1(c) would, going forward, apply to this contested matter and, if Moore chose to file a response to the SJ Motion, the response was required within twenty-one days after entry of the order—January 10, 2019.

On January 10, 2019, Moore filed the Motion, requesting the Court deny or defer ruling on the SJ Motion and allow Moore an opportunity to obtain affidavits and declarations or to take and complete discovery.  According to Moore, Debtor has refused to answer discovery propounded in the State Court Action on the theory that the State Court Action violates Debtor's discharge injunction, and has not responded sufficiently to discovery served in this case to allow Moore to respond to the SJ Motion.  In addition to the Motion seeking a deferral of the Court's consideration of the SJ Motion, Debtor filed a preliminary response to the SJ Motion on January 11, 2019 (the "Preliminary Response") (Doc. 95).

7

## II. <u>DISCUSSION</u>

"Under Rule 56(b), a summary-judgment motion can be filed 'at any time until 30 days after the close of all discovery,'" and "[t]here is no 'blanket prohibition on the granting of summary judgment motions before discovery' has occurred." *Estate of Todashev by Shibly v. United States*, 2020 WL 3397655, at *4 (11th Cir. June 19, 2020) (quoting Fed. R. Civ. P. 56(b); *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989) (per curiam)).  That being said, "'summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery.'" *Id*.

> Rule 56(d) provides shelter against a premature motion for summary judgment "when facts are unavailable to the nonmovant." Fed. R. Civ. P. 56(d). It qualifies Rule 56(c)'s requirement that the non-moving party establish that a genuine dispute of fact exists in cases "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the district court may defer considering the motion, deny the motion, allow additional time to obtain affidavits or declarations or to conduct discovery, or issue another appropriate order. Fed. R. Civ. P. 56(d). Accordingly, Rule 56 provides a nonmoving party an alternative avenue to stave off the granting of a motion for summary judgment. The party can "produce[ ] affidavits or other evidence contradicting the movants," or the party can "explain[ ] [its] failure to do so under subsection ([d])." *Wallace v. Brownell Pontiac-GMC Co*., 703 F.2d 525, 528 (11th Cir. 1983).

8

*Id.; see also Garner v. City of Ozark,* 587 F. App'x 515, 518 (11th Cir. 2014) (stating that a Rule 56(d) motion "must be supported by an affidavit which sets forth with particularity the facts the moving party expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment") (citing *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1280 (11th Cir. 1998)); *but see Frazier v. Doosan Infracore Int'l, Inc.*, 479 F. App'x 925, 931 (11th Cir. 2012) (noting that the failure to provide an affidavit is not always fatal when "justice requires postponing a ruling") (citing *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 570 (11th Cir. 1999)).

Accordingly, to succeed on a Rule 56(d) motion, the movant must articulate the "particular facts she expects to discover" and explain how the facts are relevant to the resolution of the motion for summary judgment. *Garner,* 587 F. App'x at 518; *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 859 (11th Cir. 2013) (even where the interests of justice permit the court to waive the requirement of an affidavit, movant must "specifically demonstrate how postponement of a ruling on the [summary judgment] motion will enable them, by discovery or other means, to rebut'" summary judgment by describing "what particular facts [are] sought, from whom [they are] sought," and how they would be used to rebut the respondent's arguments in support of summary judgment); *see also In re Beaulieu Grp., LLC,*

9

2020 WL 1456511, at *5 (Bankr. N.D. Ga. Mar. 20, 2020) ("[V]ague assertions of the need for additional discovery do not support the protection of Rule 56(d).").

When determining whether to grant a Rule 56(d) motion, the Court must "balance the movant's demonstrated need for discovery against the burden such discovery will place on the opposing party." *Id.* (citing *Harbert,* 157 F.3d at 1280). In doing so, the Court considers such factors as whether the information necessary to the movant's ability to respond to a motion for summary judgment is within the sole control of the respondent and whether movant's failure to conduct discovery is due to movant's inactivity or delay. *Estate of Todashev,* 2020 WL 3397655, at *4.

Accordingly, the Court must first determine which facts and legal issues are relevant to the claim upon which summary judgment is sought. Here, Debtor seeks summary judgment on his claim that Moore violated the discharge injunction by filing the State Court Action. "Section 524(a)(2) of the bankruptcy code provides that a discharge of debt in a bankruptcy proceeding 'operates as an injunction against the commencement or continuation of ... an act ... to collect ... any such [discharged] debt.'" *In re Roth*, 935 F.3d 1270, 1275–76 (11th Cir. 2019) (quoting 11 U.S.C. § 524(a)(2)). The discharge inunction "is enforced through section 105, whereby the bankruptcy court 'may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.'" *Id.* (quoting 11 U.S.C. § 105(a)). In this way, a bankruptcy court has "statutory contempt powers" that

authorize it to "impose civil contempt sanctions [for attempting to collect a discharged debt] when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Id*. (quoting *Taggart v. Lorenzen*, __ U.S. __, 139 S. Ct. 1795, 1801, 204 L.Ed.2d 129 (2019)). This Court "'may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct.'" *Id*. (quoting *Taggart*, 139 S. Ct. at 1799) (emphasis in original). "The plaintiff has the burden of proving by clear and convincing evidence that the discharge injunction was violated."  *In re Henriquez*, 536 B.R. 341, 345 (Bankr. N.D. Ga. 2015) (Sacca, J.).

The Court must first determine whether the action taken was debt collection. *Id*. at 1276 (citing *Taggart*, 139 S. Ct. at 1799).  If so, the Court "then evaluate[s] whether that violation of the discharge injunction is sanctionable under section 105, by determining if 'there is no fair ground of doubt as to whether the order barred the creditor's conduct.'"  *Id*.

As to the first requirement, the Court must find that the party accused of violating the discharge injunction attempted to collect a prepetition debt as a personal liability of the debtor.  *See In re Kalabat*, 592 B.R. 134, 143 (Bankr. E.D. Mich. 2018) ("Since post-petition debts are not discharged, the discharge injunction does not bar efforts to collect post-petition debts."); *In re Davies,* 577 B.R. 352, 361-

62 (Bankr. D. Idaho 2017) (holding that prosecuting a counterclaim for damages that "clearly arose prior to the . . . petition date" violated the discharge injunction); *In re Zellner*, 2020 WL 1181337, at *7 (Bankr. M.D. Pa. Mar. 11, 2020) (no violation of the discharge injunction where action related to debtor's post-petition failure to comply with state court orders).  Debt collection may be found where the action has the effect of pressuring the debtor to pay the debt.  *Green Point Credit, LLC v. McLean (In re McLean),* 794 F.3d 1313, 1321 (11th Cir. 2015).

"If a creditor had a lien to secure payment of a pre-petition debt before the Chapter 7 bankruptcy, that lien survives, or 'rides through' the Chapter 7 bankruptcy and bankruptcy discharge, unless the lien is avoided in the bankruptcy case," such that a "a creditor with such a lien may seek to enforce its lien rights and collect on its secured claim, sometimes called its 'in rem claim,' after discharge, even if the debtor's personal liability for the creditor's debt was discharged." *Id*.  By that same logic, if the creditor seeks to enforce a lien in an *in rem* proceeding, a violation of the discharge injunction may be found if the alleged lien is "extinguished, non-existent, or invalid," because "the liens could not secure a discharged personal obligation on a prepetition debt." *In re Joseph*, 584 B.R. 696, 702 (Bankr. E.D. Ky. 2018); *see also In re Kellogg*, 601 B.R. 537, 549 (Bankr. D. Colo. 2019) (holding that, where creditor's lien had expired prepetition due to creditor's failure to renew the lien, the creditor's post-discharge attempts to obtain a new lien and its continued

demand for repayment of its judgment debt "violated the discharge injunction because they were attempts to collect a discharged debt on an in personam basis from the Debtor").

As to the second, the Court must find that the party violated the discharge injunction "with knowledge of the [discharge] order" and that "there is no fair ground of doubt as to whether the order barred the party's conduct—*i.e.*, no objectively reasonable basis for concluding that the party's conduct might be lawful." *In re City of Detroit, Michigan*, 614 B.R. 255, 265-66 (Bankr. E.D. Mich. 2020). In this regard, a subjective good faith belief that the action taken does not violate the discharge injunction is not sufficient to avoid sanctions if such a belief is not objectively reasonable. *In re Jackson*, 2020 WL 718609, at *4 (Bankr. D. Conn. Feb. 12, 2020).

In the SJ Motion, Debtor asserts that he is entitled to judgment as a matter of law because, under the undisputed facts, the State Court Action sought to collect a prepetition, discharged debt from Debtor personally and Moore had knowledge of Debtor's discharge. Debtor submits that the facts are simple and not in dispute: (1) Moore filed the State Court Action with knowledge of the bankruptcy discharge; (2) the claims brought against Debtor were discharged; and (3) Debtor has incurred substantial legal fees in responding to the State Court Action. Specifically, Debtor contends that the Complaint seeks to establish and collect from Debtor personally a

13

prepetition debt because the damages claims are based on prepetition acts and are asserted against Debtor and entities that Moore contends are Debtor's alter egos. Further, despite Moore's inclusion of caveats designed to avoid violating the discharge injunction by limiting Debtor's liability to only damages caused by post-petition acts, the Complaint contained "no facts . . . about [Debtor's] alleged post-petition acts to 'participate, ratify, and gain the benefit of' the alleged pre-petition conspiracy."  As to the claims asserted against Debtor's alleged alter egos, Debtor asserts that all of the alter ego entities are defendants on eight counts in the Complaint and that Moore appears to seek "a personal judgment against [Debtor] for discharged debts by arguing that he is liable for the pre-petition debts of these non-debtor entities, which is prohibited by Section 524(a)(2). *See Yan v. Lombard Flats, LLC (In re Lombard Flats, LLC)*, 2016 U.S. Dist. LEXIS 38112 at *25 (Cal. N.D. 2016) (holding that post-petition lawsuit seeking to hold debtor liable for non-debtor's pre-petition debts under alter ego and reverse veil-piercing theory was a violation of the discharge injunction of Section 524(a)(2)) when "all the material facts alleged in the … complaint … giving rise to debtor's liability as the alter ego of [the non-party] were prepetition facts.")."

With regard to the alleged post-petition conspiracy claims, Debtor argues that, as a matter of fact, the Complaint failed to plead any specific facts showing any post-petition fraudulent acts by Debtor and that the Complaint includes only one post-

petition allegation in the form of a "conclusory statement that [Debtor] 'joined in, continued or ratified' a conspiracy on or after the Petition Date of March 12, 2015." As a matter of policy, Debtor urges the Court to find that the Complaint violated the discharge injunction because, "[w]ithout an injunction on the claims, the Debtor would be forced to litigate the accuracy and viability of pre-petition claims, which contravenes the entire purpose of the discharge injunction."

Debtor contends that the claims asserted in the Complaint are prepetition claims because they satisfy the "prepetition relationship test" used in the Eleventh Circuit to determine when a claim arises. *See Epstein v. Official Committee of Unsecured Creditors of Estate of Piper Aircraft Corp. (In re Piper Aircraft Corp.),* 58 F.3d 1573, 1577 (11th Cir. 1995); *see also In re Krause, Inc.*, 2005 WL 6487214, at *12 (Bankr. N.D. Ga. July 11, 2005) (Massey, J.) ("Any claim that Home Depot holds for breach of an implied warranty of merchantability arose at the time of sale."). Under this test, a "claim" does not arise prepetition unless events occur prepetition that "create a relationship, such as contact, exposure, impact, or privity, between the claimant and the [debtor]; and (ii) the basis for liability is the debtor's prepetition conduct." *Id.* Application of the *Piper* test protects a claimant's due process rights because the requirement of a prepetition relationship ensures that the debtor and the claimant will have some basis to identify the existence of contingent and unmatured claims. *See In re United States Pipe & Foundry Co.*, 577 B.R. 916,

924 (Bankr. M.D. Fla. 2017). "[F]or federal bankruptcy purposes, a pre-petition claim may encompass a cause of action that, under the state law, is not cognizable until after the petition is filed." *In re Pan Am. Hosp. Corp.*, 364 B.R. 839, 847 n.6 (Bankr. S.D. Fla. 2007); *In re Wilbur*, 237 B.R. 203, 209 (Bankr. M.D. Fla. 1999) ("[U]nder federal law, an indemnity agreement creates a contingent claim as of the date of the agreement.").

In Debtor's view, the claims in the Complaint all stem from a prepetition relationship between Debtor and his related companies and Moore and are based solely on Debtor's prepetition conduct. Moore, on the other hand, submits that the Complaint specifically included only claims that arose after Debtor filed his bankruptcy case that were based on Debtor's post-discharge conduct (although alleged prepetition conduct may be relied upon to prove the post-petition acts) and that he filed the State Court Action solely to collect from Debtor on those claims. He argues that, if Debtor "rejoined" the prepetition conspiracy, he could be held liable jointly and severally liable with his co-conspirators for the damages caused by the entire conspiracy, but contends that such a result is consistent with case law on the scope of the bankruptcy discharge. *See, e.g., Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 609 (N.D. Ill. 2015), *aff'd sub nom. Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016) ("Liability would be premised solely on [debtor's] post-discharge conduct. It only appears that [debtor] is being held liable for pre-

discharge conduct because of the joint and several liability rule, which makes [debtor] on the hook for its co-conspirators' actions. But it is the co-conspirators' liability that is based on pre-discharge conduct, not [debtor's].").

In the Preliminary Response, Moore notes the great pains he took to include language in the Complaint, as well as the amended complaints and the proposed order granting his default judgment motion, to clearly state that he was not seeking a personal judgment against Debtor for any claims arising prior to the Petition Date. Moore disagrees with Debtor's contention that such language is ineffective "boilerplate" that cannot excuse Moore's violation of the discharge injunction.  In contradiction to Debtor's statement that the Complaint included no specific allegations of post-petition conduct in furtherance of a conspiracy to defraud, Moore points to the allegation made in the Complaint regarding Debtor's involvement in transferring valuable personal property from Portofino and MHB Homes.  Further, Moore claims that Debtor has, in pleadings filed in the State Court Action, referenced the existence of his "after acquired property" and corporate assets of Hadi Homes, Inc., and that such references suggest that further discovery would lead to evidence of post-petition acts of conspiracy in connection with the acquisition of such property.  Doc. 79-3, Exh. E.  In short, despite Debtor's denials, Moore believes that Debtor committed post-petition, fraudulent acts to obtain an interest in and/or

control over the Land and personal property once owned by Portofino and MHB

Homes, entities against which Moore had a claim for his attorney's fees.

Moore insists that he cannot prove Debtor's post-petition actions without

discovery and, therefore, cannot adequately respond to the SJ Motion without such

discovery. He states that he served discovery in the State Court Action on all

defendants, but no discovery was provided. Additionally, he served discovery on

Debtor in this matter, beginning in January 2018, and took Debtor's deposition on

February 20, 2018. Moore submits that the "paltry" discovery provided by Debtor

in this case has not been sufficient and Debtor did not testify truthfully at his

deposition. Consequently, he filed a motion to compel discovery (Doc. 65). When

Debtor obtained new counsel, Moore agreed to dismiss the motion to compel in

hopes that the parties would be able to resolve the discovery dispute at a meet and

confer session, but Moore reserved the right to refile it. (Doc. 67). Moore submits

that the meet and confer session was not productive and that the most current

responses to his interrogatories are false and incomplete. The Court notes that

several of Debtor's responses appear to say that Debtor is not in a position to provide

all of the requested information because discovery is ongoing.

In his affidavit in support of the Motion, Moore details the discovery that he

seeks: (1) entity formation and government documents; (2) Debtor's bank records;

(3) Debtor's financial statements; (4) contracts and agreements; (5) communications

between Debtor and his co-defendants in the State Court Action; (6) telephone records; (7) statements; (8) regulatory filings; (9) accounting records; (10) tax returns for Debtor and his entities; (11) real estate development and marketing documents; (12) Debtor's loan applications; (13) appraisals for the Land; (14) documents regarding dock permits (15) computers; (16) passport; and (17) anything that would tend to prove a post-petition conspiracy to defraud Moore.  Although the affidavit does not state the specific facts Moore believes the discovery will illuminate and does not explicitly explain how those facts are relevant to the resolution of the SJ Motion, the Court can infer that Moore believes further discovery will produce evidence that Debtor owns or controls Diamond Island, LLC, that Diamond Island, LLC now owns the Land and personal property required to develop a subdivision; that Debtor acted in concert with the other defendants in the State Court Action to gain control of such property after the Petition Date and with intent to defraud Moore; and these post-petition acts would render his damages post-petition claims outside the ambit of the discharge and justify Moore's filing of the Complaint.

In the Opposition, Debtor asserts three reasons why Moore is not entitled to additional time to respond to the SJ Motion:  (1) Moore had a reasonable time to conduct discovery in this matter; (2)  additional discovery is unnecessary due to factual admissions Moore has made; and (3) the discovery disputes Moore claims

have prevented his discovery are "baseless."  In the event the Court defers consideration of the SJ Motion to resolve the discovery dispute, Debtor requests the Court enter a scheduling order that will ensure a prompt resolution.

First, Debtor notes that Moore has been engaged in the discovery process for over a year and has not diligently sought to resolve the discovery dispute.  In fact, since the Court struck Moore's second motion to compel discovery (Doc. 86), Moore has not refiled a request to bring the discovery dispute before the Court.  While considerable time has passed, it appears to the Court, based on its involvement in several hearings and the timing of the various matters, that Moore has remained quite active throughout the time period at issue.  It also seems reasonable that Moore did not refile his motion to compel discovery, as he instead filed a motion to reconsider the Court's order striking the motion to compel, and it took some time for the Court to resolve that motion.  While the Court certainly agrees that Moore has overcomplicated the issues, it does not appear that he has been less than diligent in his pursuit of discovery.

Second, Debtor argues that Moore should be found to have admitted the facts contained in Debtor's filed Statement of Undisputed Facts because he did not file a separate, numbered statement as to whether he disputes each fact, as required by BLR 7056-1.  Once deemed admitted, Debtor contends, these facts would permit the Court to resolve the SJ Motion in Debtor's favor without the need for further

discovery.  While the Court questions whether that is the case, the Court declines to deem the facts admitted.  Moore filed the Motion and a preliminary response, clearly putting Debtor on notice that he was seeking relief under Rule 56(d) and that his response was not intended to be a full response.  Deeming the facts admitted under these circumstances would be unfair.

Third, as to whether the alleged discovery dispute is baseless, the Court is not prepared at this time to determine the merits of Moore's contentions.  Moore claims that Debtor has documents and information that he has not produced.  Debtor claims otherwise.  The Court cannot determine the truth based on what is before it.

The Court is sympathetic to Debtor's position.  If a debtor is required to spend significant time and resources to litigate the question of whether a debt is a prepetition debt and, thus, discharged, the discharge has far less value to the debtor. Nonetheless, in certain circumstances, whether a claim is a pre- or post-petition claim is not clear and does require fact finding and legal analysis.  In such cases, the bankruptcy court may be tasked with conducting such a review to ensure that all parties are treated fairly.  While the discharge ensures debtors a fresh start, it is not a pass that allows a debtor to engage in post-petition conduct that injures others.

After considering the papers and arguments of both parties, it appears to the Court that the threshold issue is whether the Complaint asserts against Debtor only post-petition claims.  Debtor argues that the Complaint does not and cannot assert

such claims because he did not engage in any wrongful conduct post-petition and, therefore, the Complaint is an elaborate smoke screen to hide Moore's true purpose—to collect a discharged debt. Given Moore's clear, multiple attempts to put the state court and Debtor on notice that he is *not* seeking a judgment against Debtor for prepetition claims and the references, although often somewhat vague, to post-petition participation in a continuing scheme to defraud Moore, the Court can only conclude that there remains a possibility that Moore did not violate the discharge injunction.

The Court agrees that this litigation has been unnecessarily complicated and time consuming for all parties and the Court. Although Debtor understandably wishes to resolve this matter as expeditiously as possible, the Court cannot conclude that the Complaint was a disguised attempt to collect discharged debt without deciding whether Debtor has engaged in any post-petition conduct that would have justified the filing of the Complaint with the caveats included by Moore. Debtor asks the Court to do so on summary judgment, but Moore has not had sufficient opportunity to discover if his theory of a post-petition conspiracy is more than just a "conspiracy theory." That, the Court cannot do.

Moore has demonstrated that he has made attempts to obtain the discovery he believes he needs and that he has not obtained what he has requested from Debtor or other sources. The parties, of course, disagree on whether additional discovery is

relevant and whether Debtor such additional information and documents even exist. The only way to move forward in this case is to resolve the discovery issues. The Court recognizes that an evidentiary hearing will likely be required to determine the appropriate scope of the relevant discovery and whether Debtor in fact has documents and information that he is not producing,

To that end, the Motion will be granted, and the Court will defer ruling on the SJ Motion until it has resolved the parties' long-standing discovery dispute. Once the discovery dispute has been resolved, the Court will address the timing of Moore's additional response to the SJ Motion and how the Court will proceed to resolve the SJ Motion.

## III. <u>CONCLUSION</u>

For the reasons stated above,

**IT IS HEREBY ORDERED** that the *Motion to Defer or Deny Debtor's Motion for Summary Judgment or To Condition Consideration Upon Completion of Discovery* (Doc. 94, as amended by Doc. 106) is **GRANTED**;

**IT IS FURTHER ORDERED** that, on or before October16, 2020, Moore shall serve Debtor with any additional interrogatories or requests for documents he deems necessary (the "Additional Requests");

**IT IS FURTHER ORDERED** that Debtor shall have thirty (30) days from the date of the service of the last of the Additional Requests to respond to all such requests and to update his responses to any prior requests (the "Prior Requests");

**IT IS FURTHER ORDERED** that, on or before January 8, 2021, Moore shall file either a motion to compel compliance with the Additional and Prior Requests that does not exceed twenty-five (25) pages, but may refer to and incorporate any pleading already on the docket, including Docket Number 86, but shall include no attachments or exhibits, as any evidence needed to support the motion to compel, if necessary, will be presented at a hearing to be scheduled by the Court, **or** a statement that Debtor has responded sufficiently to the Additional and Prior Requests;

**IT IS FURTHER ORDERED** that Debtor shall have thirty (30) days from the date of the filing of the motion to compel, if any, to respond, and any response shall be limited to twenty-five (25) pages, without attachments or exhibits;

**IT IS FURTHER ORDERED** that Moore shall have fourteen (14) days from the date of the filing of Debtor's response, if any, to file a reply, which shall also be limited to twenty-five (25) pages and shall include no attachments or exhibits;

**IT IS FURTHER ORDERED** that Moore shall not attempt to take Debtor's further deposition without either the express permission of Debtor's counsel or the

Court and any request to do so will be made only after the deadline for Debtor's

responses to the Additional and Prior Requests has passed.

## END OF DOCUMENT

**DISTRIBUTION LIST**:

Francis X. Moore
Frank X. Moore Law
730 E 2d Street, Suite 106
Blue Ridge, GA 30513

Anna M. Humnicky, Esq.
Benjamin S. Klehr, Esq.
Small Herrin, LLC
Two Paces West, Suite 200
2727 Paces Ferry Road
Atlanta, GA 30339

Fred Milani
2267 Echo Trail NE
Atlanta, GA 30345

M. Denise Dotson, Chapter 7 Trustee
M. Denise Dotson, LLC
PO Box 435
Avondale Estates, GA 30002