**IT IS ORDERED as set forth below:**

Date: June 23, 2022



_____
Lisa Ritchey Craig
U.S. Bankruptcy Court Judge

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | * | CASE NUMBER |
| | * | |
| FRED MILANI, | * | 15-54748-LRC |
| | * | |
| | * | PROCEEDINGS UNDER |
| | * | CHAPTER 7 OF THE |
| Debtor | * | BANKRUPTCY CODE |

## ORDER

Before the Court is the *Motion to Quash and Objections to Non-Party Subpoenas* (Doc. 193, the "Motion"), filed by Diamond Cementer, LLC ("Cementer") and Diamond Island, LLC ("Diamond Island" and, collectively with Cementer, "Diamond"). The Motion is opposed by Francis X. Moore and FXM, P.C. (collectively, "Moore"). The Motion arises in connection with a *Motion for Entry of an Order Compelling Frank X. Moore to Appear and Show Cause as to*

*Why He Should Not be Held in Contempt for Violation of the Discharge Injunction* (Doc. 46, the "Contempt Motion"), filed by Fred Milani ("Debtor"). The Court held a hearing on the Motion on March 22, 2022, after which it took the matter under advisement.

## I. BACKGROUND

In the Contempt Motion, Debtor asserted that Moore violated the discharge injunction of 11 U.S.C. § 524 when he filed a complaint (the "Complaint") (Doc. 79-3, Exh. A) against Debtor in the Superior Court of Dekalb County, Georgia (the "State Court Action"). Doc. 46. In the State Court Action, Moore accused Debtor of engaging in a conspiracy that began prepetition and continued post-petition and sought enforcement of his lien against property that he believes Debtor has acquired an interest in post-petition. Moore asserts that the Complaint seeks damages from Debtor arising only from Debtor's post-petition participation in the conspiracy or for enforcement of his lien rights and, therefore, does not violate the discharge injunction.

According to the Complaint, Debtor owed Moore an attorney's fee. In 2013, Moore filed an attorney's lien against real estate owned by Debtor (the "Land") and certain dock permits (the "Attorney's Lien"). *Id.*, ¶¶ 5, 167. Moore claims that Debtor conspired with the secured lender to foreclose on the Land through a "friendly foreclosure." Specifically, Moore alleges that Debtor hired a third party

2

to purchase the Land at the foreclosure sale for a fraction of the Land's actual value. *Id*. at ¶¶ 180-88. This foreclosure effectively wiped out the Attorney's Lien.[1] Thereafter, the parties to this conspiracy carried out a prearranged plan, which ended with Debtor and his co-conspirator, Xiangtong Lu, through Diamond Island, owning the Land free of the Attorney's Lien. *Id*. ¶¶ 190-93.

Prepetition, Moore filed suit against Debtor for breach of contract. *Id*. ¶ 196. That case was later stayed by the filing of Debtor's Chapter 7 bankruptcy petition on March 12, 2015 (the "Petition Date"). Doc. 1. Moore did not seek a determination of the dischargeability of any debt owed by Debtor, and the Court granted Debtor's discharge and closed the case. Doc. 33. Thereafter, Moore filed the Complaint, asserting that, after the Petition Date, Debtor, in further conspiracy with Mr. Lu, caused Portofino at Lake Lanier, LLC ("Portofino") and MHB Homes, LLC ("MHB") to transfer fraudulently to Debtor personal property that had value to creditors of Portofino and MHB, including Moore. Complaint, ¶¶ 205, 208. The Complaint specifically stated that Moore had "named [Debtor] as a defendant solely for the purpose of recovering damages and obtaining relief for [Debtor's] conduct, transactions or occurrences after [the Petition Date,] or for any conspiracy that he joined in, continued, or ratified on and after [the Petition Date,]

---

[1] The Complaint contained several allegations of what Moore describes as a similar conspiracy engaged in by Debtor, using funds provided by Mr. Lu, to protect his personal residence from loss by foreclosure and to defraud junior lien holders on his home. The purpose of these allegations appears to be to establish a pattern of past conduct that would prove that Debtor engaged in a conspiracy to defraud Moore with regard to his Attorney's Lien and the Land. Complaint, ¶¶ 113-19.

3

to the fullest extent permitted under applicable bankruptcy law." Complaint, ¶ 200. Similar caveats were included in Counts 3-5. *Id.* ¶¶ 233, 247, 255. Instead of answering the Complaint, Debtor moved to reopen this bankruptcy case, alleging that the filing of the State Court Action violated the discharge injunction imposed by § 524 of the Bankruptcy Code. Discovery has been proceeding in this matter since early 2018.

On August 13, 2018, Debtor moved for summary judgment (the "Summary Judgment Motion") on the Contempt Motion on the basis that the Complaint included only one post-petition allegation in the form of a "conclusory statement that [Debtor] 'joined in, continued or ratified' a conspiracy on or after the Petition Date," such that the Complaint could not have asserted a post-petition, nondischarged claim against Debtor and, therefore, the filing of the Complaint must have been an attempt to collect a discharged debt. The Court found otherwise, noting that the Complaint did, in fact, allege that Debtor took new actions post-petition regarding certain assets owned by Portofino and MHB Homes and that such facts could support a post-petition claim against Debtor that was unrelated to his claim for the attorney's fee or the Attorney's Lien. For that reason, the Court granted Moore's request to defer consideration of the Summary Judgment Motion and set deadlines for Moore to conduct his additional discovery and to file a new motion to compel if necessary. Thereafter, at the request of the

parties, the Court held a discovery conference on January 15, 2021. At that time, the Court limited discovery to events occurring on or after the Petition Date.

On June 14, 2021, Moore filed a motion to compel discovery from Debtor (Doc. 169), "Motion to Compel"). The Court entered an order sustaining most of Debtor's objections to the discovery requests on September 10, 2021 (Doc. 172). Based on Debtor's status report filed on February 18, 2022 (Doc. 214), Debtor believes he has substantially completed document production. During the Hearing, Moore confirmed receipt of numerous documents and stated that he has not yet had an opportunity to review thoroughly those documents. While awaiting production from Debtor, Moore issued subpoenas for production of documents to Diamond. Diamond filed the Motion, asserting that the Subpoenas (1) request documents outside the scope of discovery in that they involve actions taken prior to the Petition Date; (2) violate an order entered by Judge Jackson staying the State Court Action; and (3) request documents that are irrelevant, disproportionate to the needs of the case, and unduly burdensome to nonparties.

II. **ANALYSIS**

"Rule 45 protects 'subpoena recipient[s] by requiring the issuer to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.'" *League of Women Voters of Fla., Inc. v. Lee*, 2021 WL 5283949, at *8 (N.D. Fla. Nov. 4, 2021); *see also Ohl v. CSX Transportation, Inc.*, 2020 WL

5

12309226, at *2 (N.D. Ga. June 19, 2020) ("Among the mandatory grounds, a subpoena must be quashed if it 'subjects a person to undue burden.'") (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)). When considering whether to quash or modify a subpoena due to undue burden, courts consider several factors, including "the 'relevance of the information requested' to the underlying litigation and the 'burden [that would be] imposed' by producing it," as well as the "status of the subpoena recipient as a non-party." *Hinton v. Alabama State Univ.*, 2020 WL 11273045, at *2 (M.D. Ala. Mar. 13, 2020); *see also Gamache v. Hogue*, 2022 WL 989483, at *7 (M.D. Ga. Mar. 30, 2022); *Hannah v. Armor Corr. Health Servs., Inc.*, 2020 WL 3414999, at *3 (M.D. Fla. June 22, 2020). The party seeking to quash a subpoena bears the burden of establishing the undue burden. *Matter of Vanbrocklin*, 2017 WL 988812, at *1 (Bankr. N.D. Ga. Mar. 13, 2017) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)); *Morton v. Lien Filers, Etc. of Heath W. Williams, L.L.C.*, 2021 WL 4815899, at *3 (N.D. Ga. Aug. 19, 2021). The "undue burden analysis requires the court to 'balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1337 (11th Cir.), cert. denied sub nom. *Jordan v. Georgia Dep't of Corr.*, 141 S. Ct. 251, 208 L. Ed. 2d 25 (2020); *see also Jenkins v. Koch Foods, Inc.*, 2020 WL 12992000, at *4 (M.D. Ala. Mar. 11, 2020) (noting that, where the

6

subpoena recipient's "status as a nonparty weighs against disclosure, the relevance of the requested documents to Plaintiff's case is non-existent and the burden that would be imposed . . .for producing the documents requested . . . [,] the interests served by quashing the subpoena clearly and greatly outweigh the interests served by enforcing it").

First, the Court agrees with Diamond that some of the documents requested are outside the discovery time frame previously established by the Court—after the Petition Date. Moore cannot circumvent the Court's limitation by requesting documents "in existence" on the Petition Date. Second, the Court disagrees with Diamond's argument that it need not comply with the subpoena because discovery in the State Court Action is stayed. It appears to the Court that Judge Jackson's intent in staying the State Court Action was to await a decision by this Court as to what claims, if any, against Debtor survived Debtor's discharge. To the extent that Diamond has information that would assist this Court in making that determination, it should be produced, even if it also happens to be relevant to Moore's claims against Diamond that are pending in the State Court Action. That being said, given the fact that Diamond is a nonparty and the extraordinarily broad nature of the Subpoenas, the Court cannot find at this stage of the litigation that the relevance and proportionality of the information requested outweighs the burden that will be imposed on Diamond if required to comply at this time. For this

7

reason, the Court will quash the subpoenas in part and direct Diamond to provide a very limited response, as detailed below.

Diamond's remaining objections implicate the relevance and proportionality of requests made to nonparties. "While Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Jordan,* 947 F.3d at 1329 (citing Fed. R. Civ. P. 26(b)(1); Advisory Committee Note to the 1970 Amendments to Rule 45). "Thus, a subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information." *Id*.

Relevant information is information that is "likely to lead to the discovery of admissible evidence," *Martin v. Ward*, 2021 WL 1186749, at *5 (N.D. Ga. Mar. 30, 2021), and information that has "a 'tendency to make a [consequential] fact more or less probable,'" *Lee*, 2021 WL 5283949, *8 (quoting Fed. R. Evid. 401). Further, "Federal Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery as 'any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,' considering the importance of the issues at stake, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, and whether the burden of the discovery outweighs the likely benefit." *Davis v. Nationwide*

*Ins. Co. of Am.*, 2020 WL 7480819, at *3 (S.D. Fla. Dec. 18, 2020); *see also In re Takata Airbag Prod. Liab. Litig.*, 15–2599–MD–Moreno, 2016 WL 1460143, at *2 (S.D. Fla. Mar. 1, 2016) ("It is well established that the courts must employ a liberal standard in keeping with the purpose of the discovery rules. Fed. R. Civ. P. 26(b)(1). However, Rule 26(b) allows discovery "through increased reliance on the commonsense concept of proportionality."). "The party seeking to enforce a subpoena bears the burden of demonstrating that the request is relevant." *Hinton,* 2020 WL 11273045, *2 (citing *Fadalla v. Life Auto. Prods. Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007)); *see also Robinson v. McNeese*, 2021 WL 232672, at *2 (M.D. Ga. Jan. 22, 2021) (stating that, "as a general matter, 'the party seeking to enforce a subpoena bears the burden of demonstrating that the request is relevant'").

Accordingly, whether a subpoena requests irrelevant information "depends on the claims asserted in the underlying action and the legal standards that govern those claims," including defenses that may be raised. *Jordan,* 947 F.3d at 1329. Therefore, the Court must examine the showing that Moore must make to defeat Debtor's claim that Moore violated the discharge injunction. As the Court noted in previous orders, Debtor seeks two forms of relief in this contested matter: (1) a ruling that Moore is in contempt of the discharge injunction and should be sanctioned; and (2) a declaration that any claim filed by Moore against Debtor in

the State Court Action has been discharged. Through § 105(a), this Court can enforce the discharge injunction by granting both types of relief. *See In re Roth*, 935 F.3d 1270, 1275–76 (11th Cir. 2019) (noting that a bankruptcy court has "statutory contempt powers" that authorize it to "'impose civil contempt sanctions [for attempting to collect a discharged debt] when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order'") (quoting *Taggart v. Lorenzen*, __ U.S. __, 139 S. Ct. 1795, 1801, 204 L.Ed.2d 129 (2019)). In defense, Moore asserts that the Complaint sought to hold Debtor liable only for post-petition claims. As detailed above, Moore believes he can demonstrate this through his legal theory that Debtor's post-petition rejoining of a conspiracy converted the prepetition claim for his attorney's fee and damages from Debtor's fraud into a post-petition claim. Further, as noted in its prior orders, the Complaint also contains an allegation of post-petition conduct by Debtor that could form the basis of a post-petition claim separate and apart from Debtor's liability for the attorney's fee and Debtor's alleged prepetition, fraudulent conduct concerning the foreclosure of the Land. To the extent such a claim arose post-petition, it would not be subject to the discharge injunction and could support the conclusion that the filing of the State Court Action was not simply a disguised attempt to collect a prepetition, discharged debt. *See generally*

*Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1321 (11th Cir. 2015).

Much of the information sought from Diamond appears to be relevant to Moore's defense under his theory that the alleged friendly foreclosure of the Land constituted a conspiracy and that Debtor's "rejoining" the conspiracy post-petition would render Debtor liable for all the damages caused by the conspiracy, with such claim for damages constituting a post-petition claim. The Court has not yet had a full opportunity to consider the validity of this theory as a matter of law or fact. If, upon further briefing, the Court were to find that Moore's theory fails, much of Debtor's relationship with Diamond and whether Debtor engaged in previous "friendly foreclosures" as a means of defrauding his creditors would not be relevant, as all that activity appears to have occurred prepetition. As the Court understands Moore's allegations, discovery would then be limited to information regarding Debtor's post-petition involvement in any fraudulent transfers of assets of Portofino and MHB Homes. Such a legal ruling would, presumably, narrow the scope of the relevant documents significantly. Further, Moore has not yet had a full opportunity to review the documents produced by Debtor to determine whether some of the information sought in the Subpoenas is already in his possession.

Balancing all of the above and weighing those factors against the overly broad nature of the requests and the fact that Diamond is a nonparty, the Court

concludes that the Subpoenas impose an undue burden and must be quashed in part under Rule 45(d)(3)(A)(iv).[2] The subpoena issued to Diamond Island contains 28 separate requests and requires reference to as many as 212 definitions (which are not in alphabetical order) to decipher the obligation imposed upon Diamond Island to search its records and produce documents. Further, each individual request relates to numerous topics and entities. For example, the subpoena demands production of Diamond Island's "files" in existence after the Petition Date relating to 26 different topics with no other limitations, as well as "any and all communications" between Diamond Island and any affiliates (defined rather broadly through the incorporation of § 101(2)'s definition) and 40 different individuals and entities going back 7 years without any limitation as to the subject matter of the communications and all internal emails and memos regarding 26 topics, going back 7 years. The request for general business records is incredibly broad and intrusive, including a request for 7 years' worth of tax returns, tax-related forms, and bank records, as well as copies of the corporate minutes for 6 years that discuss any of 26 different topics and the right to access and mirror image all computers. The subpoena issued to Diamond Cementer is equally broad.

Moore takes issue with the fact that Diamond has not come forth with any specifics regarding how many documents would need to be produced and argues

---

[2] Moore has not sufficiently demonstrated that the Court should disregard Diamond's separate legal existence and treat Diamond as a party.

that, without such information, the Court cannot determine that production would truly place an undue burden on Diamond. He readily admitted during the Hearing that it is likely that Diamond has nothing responsive to many of the requests and insists that this is evidence that the requests are not burdensome. Moore overlooks the fact that deciphering the Subpoenas and searching for documents also impose a burden and that Moore had an obligation to avoid imposing an undue burden on Diamond. He could have done so by tailoring the Subpoenas to exclude requests he had a good faith basis to believe did not apply to Diamond and by not expanding the scope of the search beyond the Court's currently imposed discovery time-period. Instead, he chose to be as aggressive and inclusive as possible, and, therefore, the Court must quash the majority of the requests in the Subpoenas.

As discussed above, the Complaint contains allegations of post-petition conduct that is not dependent upon a finding that the prepetition foreclosure activity was a conspiracy to defraud Moore. The Court finds that there is no question as to the relevancy of the information sought regarding these allegations, the information is not outside the scope of the Court-imposed discovery time period, and the requests are not overly broad and should not impose an undue burden upon Diamond. For these reasons, Diamond Island shall comply with the requests for information in Items 1(d), (e), & (x); 3(d), (e), & (x); 6(m) & (t); 15(d), (e), & (x); 16(d), (e), & (x); 22; 23; 26; and 27 of the Diamond Island

subpoena, and Diamond Cementer shall comply with requests for information in Items 4(d), (e), & (x); 7(d), (e), & (x); 8(d), (e), & (x); 12(m) & (t); 21(d), (e), & (x); and 22(d), (e), & (x).

### III. CONCLUSION

For the reasons stated above,

IT IS ORDERED that the Motion is **GRANTED in part** and **DENIED in part**;

IT IS FURTHER ORDERED that Diamond Island shall comply with the requests for information in Items 1(d), (e), & (x); 3(d), (e), & (x); 6(m) & (t); 15(d), (e), & (x); 16(d), (e), & (x); 22; 23; 26; and 27 of the Diamond Island subpoena, and Diamond Cementer shall comply with requests for information in Items 4(d), (e), & (x); 7(d), (e), & (x); 8(d), (e), & (x); 12(m) & (t); 21(d), (e), & (x); and 22(d), (e), & (x), within **thirty (30) days** of the date of the entry of this Order.

**END OF DOCUMENT**

**DISTRIBUTION LIST**:

Francis X. Moore
Frank X. Moore Law
730 E 2d Street, Suite 106
Blue Ridge, GA 30513

Anna M. Humnicky, Esq.
Benjamin S. Klehr, Esq.
Small Herrin, LLC
Two Paces West, Suite 200
2727 Paces Ferry Road
Atlanta, GA 30339

Fred Milani
2267 Echo Trail NE
Atlanta, GA 30345

Matthew Greer Hawk
Sugarman Law LLP
154 Krog St. NE, Suite 190
Atlanta, GA 30307

Will B. Geer
Wiggam & Geer, LLC
Suite 1150
50 Hurt Plaza SE
Atlanta, GA 30303

M. Denise Dotson, Chapter 7 Trustee
M. Denise Dotson, LLC
PO Box 435
Avondale Estates, GA 30002